IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| BRIAN JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08-CV-3199 |
| ) | |
| NURSE L. BUCHANAN, et al. ) | |
| ) | |
| Defendants. ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

Plaintiff pursues a variety of claims arising from his incarceration in Western Illinois Correctional Center. On April 19, 2012, the Court granted summary judgment for 15 Defendants and directed the remaining Defendants to file a supplement summary judgment motion.

Before the Court is Defendants' supplemental motion for summary judgment. The motion will be granted in part and denied in part, leaving fourteen Defendants on claims arising from several unrelated occurrences. Though the occurrences are unrelated, the

1

Court believes that the most efficient way of resolving Plaintiff's remaining claims is through one jury trial.

ANALYSIS

The Court presumes familiarity with its prior order on summary judgment (d/e 149).

## I.  Claims against Nurses Ring, Thornton, Ashcraft, and Hazelrigg

The claims against Nurses Ring, Thornton, Ashcraft, and Hazelrigg arise from an alleged denial of medication on May 24, 2007, and January 30, 2008.  Plaintiff also claims that the Nurse Defendants retaliated against Plaintiff for filing grievances.

The Nurse Defendants did not file a supplemental motion for summary judgment.  Accordingly, these claims will be tried to a jury.

## II.  Denial of Access to Library Restroom

Plaintiff avers that, as a result of "numerous operations on [his] lower bowels" he frequently needs immediate access to a restroom.  He avers that he told Defendants Skiles, Olson, and Hamilton of this need, but that they refused to allow Plaintiff to use the restroom near the prison law library.  (Pl.'s Aff. d/e 186, p. 7.)

2

Plaintiff avers that he could not avoid urinating and defecating on himself "a few times" because he was not allowed to use the restroom by the library.

Plaintiff's claim arises under the Eighth Amendment (deliberate indifference to serious medical needs) and/or the Rehabilitation Act (failure to accommodate Plaintiff's disability to enable him to access library on the same basis as nondisabled inmates). See Jaros v. IDOC, et al., 684 F.3d 667 (7th Cir. 2012)(inmate state RA claim where refusal to accommodate his disability kept the inmate from accessing meals and showers on the same basis as nondisabled inmates).

Defendant Skiles does not remember Plaintiff. Defendant Olson remembers Plaintiff but does not recall Plaintiff urinating or defecating on himself. According to Defendants, a practice was in place in 2007-08 which prohibited inmates from using the library restroom while visiting the library. Defendants assert that this rule was implemented "after it was discovered that inmates were abusing their restroom privileges and disturbing class that were ongoing throughout the building." (Olson Aff., para. 2.) Under this rule, an inmate leaving the library to use the restroom could not

3

return to the library that day, but could file a request to visit the library another day.

The Court concludes that disputed issues of material fact remain regarding whether Defendants were aware of Plaintiff's medical need to use the bathroom on a frequent and emergent basis. A disputed question of material fact also exists regarding whether Defendants could have made an exception to the bathroom policy for Plaintiff. Summary judgment will be denied on this claim.

### III.  March 28, 2007 Disciplinary Report

Defendant Cowick wrote Plaintiff a disciplinary report on March 28, 2007 for Plaintiff's alleged threats to staff based on statements Plaintiff made in a grievance Plaintiff filed. According to Plaintiff, his grievance stated only that if his grievances were not processed, then he would be forced to file a lawsuit because he had a right to exhaust his administrative remedies. Plaintiff was found guilty, but the guilty finding was expunged by the Administrative Review Board.

Threatening or insolent remarks in a grievance are not protected by the First Amendment. Hale v. Scott, 371 F.3d 917 (7th Cir. 2004)(inmate's remark in grievance about employee's alleged

4

sexual misconduct was libelous).  However, a reasonable juror could find that Plaintiff's statements in this grievance were neither threatening nor insolent.  Plaintiff had a First Amendment right to grieve the conditions of his confinement.  Watkins v. Kasper, 599 F.3d 791, 798 (7th Cir.2010)("A prisoner has a First Amendment right to make grievances about conditions of confinement.") Accordingly, this claim remains in the case.

## IV.    Confidential Phone Conferences with Criminal Attorney

Plaintiff claims that, on about three occasions, Defendants Redshaw and Chute refused to leave the room while Plaintiff was speaking on the phone to Plaintiff's criminal lawyer.

Plaintiff has a constitutional right to confidential communications with his attorney.  Denius v. Dunlap, 209 F.3d 944, 953-55 (7th Cir. 2000).  However, Defendant Chute's affidavit demonstrates that Plaintiff's rights were not violated.  A procedure exists for inmates to place confidential phone calls to their attorneys:

> If an inmate wants to hold an unmonitored conversation with his attorney, he has to place his attorney's name and number on his regular call list.  Once the attorney is on this list, the inmate may make unmonitored, collect

> calls to his attorney from the inmate phone located in each housing unit.

(Chute Aff., para. 2.) Outside of this procedure, an attorney may request the prison to place a collect call. During the relevant times, collect calls requested by an attorney were made from the clinical services office where an inmate could not be left unattended because of equipment in the room. (Chute Aff., para. 3). This changed in September 2009. Collect calls requested by an attorney are now made from a Lieutenant's office with a guard standing outside the office. (Chute Aff., para. 4.).

Defendants did not violate Plaintiff's constitutional rights by remaining in the clinic services room during Plaintiff's phone conference in order to ensure protection of the equipment. The prison has a legitimate security interest in protecting its equipment. See Czapiewski v. Bartow, 2008 WL 5262801 (W.D. Wis., Judge Crabb)(applying Turner reasonable relation to legitimate interest test to right to communicate confidentially to attorney). Additionally, Plaintiff had an alternative route for having a confidential call with his

attorney—he could have followed the procedures in place. In any event, a few sporadic instances where Plaintiff was unable to converse confidentially with his attorney do not violate the Constitution.

## VII. First Amendment Retaliation Claim against Defendant Jennings

Defendant Jennings wrote Plaintiff a disciplinary report for gang activity based on Plaintiff's correspondence to Plaintiff's brother. According to Jennings' affidavit, Plaintiff was a "validated member of a security threat group" when Plaintiff attempted to send an obituary of a gang member to Plaintiff's brother, who was incarcerated in another prison. (Aff. Jennings, para. 2.) Jennings also avers that Plaintiff included in his letter a message from another known gang member to Plaintiff's brother. Id. Jennings avers that the ticket "was not written in retaliation for any action taken by inmate Jones. A ticket would have been written in this situation regardless of the inmate." (Aff. Jennings, para. 4.)

Plaintiff counters that Plaintiff had been permitted to possess the obituary for months and that Plaintiff had permission to correspond with his brother. Plaintiff asserts that he was merely

7

informing his brother that a family friend had passed away. He argues that Defendant Jennings knew that Plaintiff was not sending gang messages, and that Jennings wrote the ticket to retaliate against Plaintiff because of Plaintiff's prior grievances and because Plaintiff had overturned Jennings' prior attempts to keep Plaintiff in segregation.

The Court concludes that determining Jennings' motive for writing the disciplinary report turns largely on Jennings' credibility and the reasonableness of Jennings' conclusion that the correspondence was gang activity. Accordingly, summary judgment must be denied as to Defendant Jennings.

However, summary judgment will be granted to the adjustment committee members who relied on the testimony from the Internal Affairs officers to find Plaintiff guilty on Jennings' disciplinary ticket. Plaintiff does not dispute that the prison has a legitimate security interest in stopping gang activity. The committee members do not violate Plaintiff's First Amendment rights by relying on the expertise and testimony of internal affairs officers regarding whether Plaintiff's correspondence could be

reasonably construed as gang activity. Summary judgment will be granted to Defendants Ashby, Davis, and Walls on this claim.

## VIII. Discrimination claims against Defendants Sidwell, Cosgrove, Gilson, and Walls.

Defendants Sidwell and Cosgrove allegedly pulled Plaintiff from the cafeteria line on several occasions because Plaintiff had his hair styled in cornrows. The Court construes this claim as an equal protection claim that Sidwell and Cosgrove singled out Plaintiff because of Plaintiff's race.

Neither Defendants Sidwell nor Cosgrove remembers Plaintiff. They aver that they have never pulled an inmate from the chow line based on race or cornrows. Sidwell avers that he does pull an inmate from the chow line if a gang sign (or suspected gang sign) is braided into the hair, to obtain the inmate's name and number, which Sidwell submits to Internal Affairs. Inmates are not allowed to display gang signs for safety and security reasons. (Sidwell Aff., paras. 3-6.) Cosgrove avers that he has pulled inmates out of line if the inmate does not have his identification card or to conduct random searches. (Cosgrove Aff., paras. 4-7.)

9

Plaintiff asserts that his hair was not designed with gang signs and that he was never written a ticket for displaying gang signs. Plaintiff testified in his deposition that Sidwell and Cosgrove made racist remarks such as "you n----- going to learn not to come into my chow line with braids." (Plaintiff's Dep. p. 7.)  Racist comments alone do not violate the Constitution, but may be evidence of racial motivation.

The Court concludes that deciding this claim requires a credibility determination, which only the jury may do.  Summary judgment is denied on this claim as to Defendants Sidwell and Cosgrove.   Summary judgment is also denied to Defendants Walls and Gilson for allegedly maintaining a policy banning black inmates from attending meals with cornrows in their hair.

## IX.  Defendant Pritchard

Plaintiff alleges that Defendant Pritchard pushed Plaintiff into a steel bunk, causing a knot on Plaintiff's forehead.  This incident apparently occurred when Plaintiff was escorted from the cafeteria to his cell after Plaintiff disobeyed a direct order.

Defendant Pritchard avers that he does not remember Plaintiff, and that Pritchard would not have escorted Plaintiff from the cafeteria. (Aff. Pritchard, para. d/e 159-1.)

Resolving whether Defendant Pritchard escorted Plaintiff or used excessive force against Plaintiff requires a credibility determination. Accordingly, summary judgment must be denied on this claim.

**X.   Opening of Legal Mail from Criminal Defense Attorney**

Plaintiff contends that Defendants Seivers and Hapke opened legal mail from Plaintiff's criminal defense lawyer on at least three occasions.

Prison procedures are in place to protect the confidentiality of legal mail to inmates. First the legal mail is separated from the regular mail. Then the legal mail is delivered to the inmate, who opens the mail in the officer's presence. If legal mail is inadvertently opened outside an inmate's presence, "the letter is resealed and stamped 'Opened in error, contents not examined.'" (Affs. Hapke & Seivers, paras. 2, 4.)

Plaintiff contends that Hapke and Seivers intentionally opened legal mail outside his presence "numerous times," and that they

11

destroyed the envelopes and contraband which the purported to find inside the envelopes. Neither Hapke nor Seivers has any recollection of Plaintiff.

A reasonable juror could not find for Plaintiff on this claim. First, Plaintiff has not shown that the letters were in fact confidential legal mail from his attorney. The letters are not in the record. Merely labeling correspondence as confidential legal mail does not make it so. Further, Plaintiff is not clear how many times his alleged confidential legal mail was opened. Isolated incidents of opening a prisoner's confidential legal mail outside of his presence generally do not violate the Constitution absent a detrimental effect on the prisoner's "access to justice." Guarjardo-Palma v. Martinson, 622 F.3d 801, 805 (7th Cir. 2010). Plaintiff has no evidence that his criminal proceedings were hindered in any way by these alleged instances of opening his legal mail. Id. Summary judgment must be granted to Defendants on this claim.

## XI. Trial Logistics

The claims surviving summary judgment are against different Defendants and arise from unrelated occurrences. *See* Fed. R. Civ. P. 20 (permissive joinder). However, having six separate trials

makes little sense. The most efficient and cost-effective manner to handle the remaining claims, in the Court's opinion, is to have one trial, taking all the evidence on each claim seriatim. For example, Plaintiff will first present all of his evidence on his claims against the Nurse Defendants, and Defendants will follow with all their evidence in defense of the claims against the Nurses. Once the parties have presented all their evidence on Plaintiff's claims against the Nurses, the parties will move on to the library restroom claim, and so on until each claim is addressed.

IT IS THEREFORE ORDERED:

1. The supplemental motion for summary judgment filed by Defendants Ashby, et al., is granted in part and denied in part (d/e 158) as explained below.

2. Summary judgment is granted to Defendants on Plaintiff's claim arising from alleged violations of his right to speak to his attorney on the phone confidentially. Defendants Chute and Redshaw are dismissed because they are implicated only in this claim.

3. Summary judgment is granted to Defendants Ashby, Davis, and Walls on Plaintiff's First Amendment claim arising from

Plaintiff's punishment for his correspondence to Plaintiff's brother.

4. Summary judgment is granted to Defendants on Plaintiff's claim of opening of Plaintiff's confidential legal mail. Defendants Hapke and Seivers are dismissed because they are implicated only in this claim.

5. The following claims remain for trial:

   a. Claims against Defendants Ring, Thornton, Ashcraft, and Hazelrigg for:  1) deliberate indifference to Plaintiff's serious need for medicine on May 24, 2007 and January 30, 2008; and, 2) retaliation against Plaintiff for filing grievances.

   b. Eighth Amendment and Rehabilitation Act claims against Defendants Olson, Hamilton, Skiles, Gilson, and Walls arising from the refusal to allow Plaintiff to access the restroom near the law library.  The Court construes the Rehabilitation Act claim against these Defendants in their official capacities.

 c. Equal protection claim against Defendants Sidwell and Cosgrove for removing Plaintiff from the cafeteria line because of Plaintiff's race.

 d. Equal protection claim against Defendants Walls and Gilson that Western Illinois Correctional Center had or has a policy banning black inmates with hair styled in cornrows from attending meals.

 e. Eighth Amendment excessive force claims against Defendant Brooks and Defendant Pritchard.

 f. First Amendment retaliation claim against Defendant Jennings for writing Plaintiff a disciplinary report for gang activity in retaliation for Plaintiff's grievances and challenges to adverse events.

6. A final pretrial conference is scheduled for May 14, 2013 at 1:30 p.m.  Plaintiff shall appear by video conference.  Defense counsel shall appear in person.  The parties are directed to submit an agreed, proposed final pretrial order at least seven days before the final pretrial conference.  Defendants bear the responsibility of preparing the proposed final pretrial order and mailing the proposed order to Plaintiff to allow Plaintiff

sufficient time to review the order before the final pretrial conference.  See CD-IL Local Rule 16.3.

7. The proposed final pretrial order must include the names of all witnesses to be called at the trial and must indicate whether the witness will appear in person or by video conference. Nonparty witnesses who are detained or incarcerated will testify by video.  Other nonparty witnesses may appear by video at the Court's discretion.  The proposed pretrial order must also include the names and addresses of any witnesses for whom trial subpoenas are sought.  The parties are responsible for timely obtaining and serving any necessary subpoenas, as well as providing the necessary witness and mileage fees.  Fed. R. Civ. P. 45.

8. The exhibit section of the proposed final pretrial order must list by number all the exhibits a party may seek to introduce at the trial and give a short description of the exhibit.  (For example, "Plaintiff's Ex. 1: 11/10/12 health care request"). The parties must prepare their own exhibits for introduction at the trial, marking the exhibits with the same number that is on the list submitted to the Court.  Exhibits that are

introduced at trial will be kept in the Court record. Therefore, the party offering the exhibit is responsible for making a copy of the exhibit to keep for the party's own records. Additionally, the parties are directed to exchange copies of their marked exhibits at least ten days before the final pretrial conference. If a party intends to object to the introduction of a proposed exhibit, that party must provide the Court a copy of the exhibit and an explanation of the grounds for objection at least five business days before the final pretrial conference. Objections will be argued orally at the final pretrial conference.

9. The Court will circulate proposed jury instructions, a statement of the case, and proposed voir dire questions prior to the final pretrial conference, for discussion at the final pretrial conference. Proposed additional/alternate instructions and voir dire questions must be filed five business days before the final pretrial conference. The jury instructions, statement of the case, and voir dire questions will be finalized at the final pretrial conference, to the extent possible.

3:08-cv-03199-SEM-TSH   # 201    Page 18 of 18

10. Motions in limine are due at least five business days before the final pretrial conference, to be argued orally at the final pretrial conference.

11. The date for the jury selection and the jury trial will be determined at the final pretrial conference. In light of the Court's busy trial calendar, the parties are reminded that they may consent to a trial before Magistrate Judge Cudmore. 28 U.S.C. § 636(c)(1)(parties may consent to full time Magistrate Judge conducting "any or all proceedings in a jury or nonjury civil matter). Consent is completely voluntary: the parties are "free to withhold consent without adverse substantive consequences." 28 U.S.C. § 636(c)(3).

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1. Issue a video writ to secure Plaintiff's appearance at the final pretrial conference;

2. Terminate Defendants Chute, Redshaw, Hapke and Seivers.

ENTER:         March 18, 2013
FOR THE COURT:                    **s/Sue E. Myerscough**
                                  SUE E. MYERSCOUGH
                                  UNITED STATES DISTRICT JUDGE

18